# Foley, Appellant, *v.* German Lehigh Building Assn.

*Building and loan associations—Principal and agent—Embezzlement by conveyancer of association—Judgment.*

Where a building and loan association requires a prospective borrower to make his application through one of several conveyancers designated by the association, and requires that the money shall be paid out only on his recommendation, and it appears that a conveyancer selected, embezzles money paid to him by the association to satisfy a mortgage on the borrower's property, the loss will fall on the association, and not on the borrower, inasmuch as the conveyancer is the agent of the association.

In such a case where the association pays to the designated conveyancer the sum of one thousand dollars, to be secured by a third mortgage on the borrower's property, and of this sum the conveyancer retains $698.39 to pay off a second mortgage on the property, and pays over the balance to the borrower, but subsequently embezzles the amount which he had retained, and the borrower, after judgment had been entered on the bond accompanying the third mortgage and after her property has been swept away by a sale under the second mortgage, sues the association in assumpsit for the exact sum which the conveyancer retained she can recover; and she may do this without proceeding to have the judgment on

214 FOLEY, Appellant, v. GERMAN LEHIGH B. ASSN.

the bond opened, and reduced by whatever sum was found to be due from the association to her. When she makes an effort to collect her judgment, the court may reduce it by whatever amount may be found due upon the judgment on the bond against her.

Argued Oct. 24, 1917.  Appeal, No. 298, Oct. T., 1917, by plaintiff, from judgment of C. P. No. 1, Philadelphia Co., June T., 1913, No. 4848, for defendant n. o. v. in case of Mary V. Foley v. German Lehigh Building Association.  Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.  Reversed.

Assumpsit to recover $946.39 with interest from May 1, 1911, alleged to be due plaintiff as the balance of consideration of bond and mortgage given by plaintiff to defendant.  Before BREGY, P. J.

The facts are stated in the opinion of the Superior Court.

By direction of the court the jury returned a verdict for plaintiff for the amount of the claim.  Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant n. o. v.

*Thomas S. Lanard*, for appellant.—The conveyancer was the defendant's agent: Cunningham v. Mut. B. & L. Assn., 6 Dist. Rep. 99; Gilbert v. Elk Tanning Co., 221 Pa. 176; Kilpatrick v. Home B. & L. Assn., 119 Pa. 30.

When a building association conveyancer retains at the settlement of a mortgage a sum sufficient to satisfy an existing mortgage, and fails to pay said mortgage, and later the borrower is compelled to pay the same—a suit for amount withheld by the association's agent will be sustained, notwithstanding the fact that the association has entered its bond and secured judgment thereon: Millingar v. Hartupee, 53 Pa. 362; Smuller v. Union Canal Co., 37 Pa. 68; Tagg v. Bowman, 108 Pa. 273.

*Adolph Eichholz,* for appellee.—In the handling of the money, Otterstetter, was Mrs. Foley's agent and not that of the German Lehigh Building Association: Pepper v. Cairns, 133 Pa. 114; Reformed Presby. Church v. Livingston, 210 Pa. 536.

OPINION BY KEPHART, J., March 2, 1918:

The appellant can only recover the amount claimed in her statement and in the manner pleaded. She was the owner of a property situate in Philadelphia, which was subject to a first mortgage of $3,000 and a second mortgage of $1,700. She applied to the appellee for a loan of $1,000. This application was made through the appellee's conveyancer and the money could be paid out only on his recommendation. She could not select any one to do the things necessary to secure the loan except one of the conveyancers designated by the company, and Otterstetter, a conveyancer, was directed by the company to take charge of this loan. It was a part of his duty, under the testimony, to see that the liens that were to be paid off by the loan were in fact paid off. For this purpose the warrant or order was endorsed by the appellee to the conveyancer. The written direction to the conveyancer to receive the money did not change his position with the company. The conveyancer was the agent of the appellee and responsible to the appellant for any negligent act, misuse or misapplication of moneys and for any damage that might flow from such conduct. No money would be paid to a borrower by a conveyancer which might imperil any loan. The appellee kept its hand on the money loaned, either through one of its executive officers or some one who stood in such position that anything he might do would be regarded as the association's act. Its chief concern was that its lien should have the place on the record that the borrower engaged to give it. The appellant secured a loan of $1,000. She had arranged to pay the second building and loan mortgage, which, by crediting the value of some stock

owned by her, was reduced to $698.39.    The amount nec-
essary to satisfy this mortgage was retained by the con-
veyancer.    He had been designated to receive it and sat-
isfy the second mortgage.    The conveyancer appropri-
ated the money and absconded; the second mortgage
was not paid.    The appellant having defaulted in the
payments on account of this mortgage, an execution was
issued and the appellant's property sold for $1,200, sub-
ject to the lien of the first mortgage.    There was appro-
priated by the sheriff to the second mortgage from the
sale of the property $977.98.    The amount now claimed
to be due on this mortgage was considerably more than
this figure.    The difference between the amount paid on
this mortgage and the selling price represented costs,
water rent and taxes.    The appellee received nothing
from the sale on the mortgage of $1,000.    The appellant
also defaulted in the payments due on this third mort-
gage, representing the appellee's loan.    We cannot de-
termine how the appellant regarded the transactions
when she discovered the second mortgage still existed
against her property.    Prior to her application to the
appellee she regularly met all charges against her and it
may be when she knew she had been defrauded of her
money, with three mortgages to pay, she regarded the
situation as hopeless and permitted water rents and tax
levies to accumulate, as well as the fines and charges due
on these mortgages.    However, her property was sold
on the lien the appellee was to remove and through the
malfeasance of its officer the plaintiff's property was
swept away from her.    She here sues to recover the sums
of money that the appellee should have paid on the sec-
ond mortgage and fixes that sum as her loss.    The action
is assumpsit.    She does not ground her action on the
damages sustained for the malfeasance of the appellee's
officer, nor fix her damages at the value of her property
less what ought to have been the lawful encumbrance
against it and such other damage she might have suf-
fered.    The price paid at sheriff's sale may or may not

have been the value of the property. She claims only the sum of money that should have been paid to the second mortgagee. She sues for the fulfillment of her contract. On this phase of the case, she undoubtedly was entitled to performance by the appellee. It should have paid the second mortgage and that not having been done, she is entitled to the money retained by its officer, $698.39; but assuming that she is so entitled to the money she would then owe the appellee the amount due on the bond and mortgage. She cannot escape her liability on the bond and mortgage when she receives from the appellee the money therein stipulated. Had the conveyancer paid to her directly all the money in the first instance and permitted the record to stand as it did stand at the time of the sheriff's sale, the appellant would have owed the amount as found at the time of the sheriff's sale to be due on the second and the third mortgages. If later on, or in this present action, she receives the full amount of this loan, the bond and mortgage will be an effective claim against her. We then have the judgment recovered in this action due from the appellee to the appellant and the sum due on the bond and mortgage from the appellant to the appellee. But it is urged that the appellant should have appeared in the court below and by petition have asked that the judgment on the bond be opened and that the amount of said judgment be reduced by whatever sum was found to have been due to this appellant. It was not necessary to follow this practice. The appellant could insist on the performance by the appellee of its undertaking. It had secured from her a bond and mortgage which called for the payment of $1,000 at a future time. In return the association was to give her $1,000. She stands on her undoubted right to receive the sum of money called for in that mortgage. She might have gone into the court below and asked that the judgment be reduced, or disaffirmed her contract entirely. She did not wish to do this, but wanted the contract performed as originally

contemplated. She wanted the money for which her property stood as security and which she contracted to get, and the appellee having failed to give her the full amount, she could treat her bond and mortgage as valid and sue to recover the balance. The appellant's right of action was not, as urged by the appellee, barred by the bond and mortgage. The amount due thereon was not regarded in the appellee's answer as a set-off, but the bond and mortgage were submitted in bar of the action. However, as we here determine, the appellant is entitled to judgment in this action for the amount claimed in the manner pleaded, when an effort is made to collect, it will be met with the claim of the appellee of the balance due on its loan with interest. It may be, when a calculation is made, that the appellee will not be indebted to the appellant. This can be worked out in the court below. In conclusion we may say that we are not impressed with the appellee's argument that it was induced by fraud to lend the amount of money that it did on this property, nor do we consider the appellant's failure to answer the attachment as conclusive. The court below correctly determined the question at the trial, but was led into error in concluding that the appellant was compelled to proceed through the bond.

The judgment of the court below is reversed and the record remitted with direction to enter judgment on the verdict.